FILED
2012 Sep-29 PM 03:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **CEDRIC D. BURROUGHS, et al.,** | ) |
| | ) |
|     **Plaintiffs,** | ) |
| | ) |
| **v.** | )   **Case No.: 1:08-CV-1239-VEH** |
| | ) |
| **HONDA MANUFACTURING OF ALABAMA, LLC,** | ) |
| | ) |
|     **Defendant.** | ) |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION AND PROCEDURAL HISTORY

This lawsuit arises under the Fair Labor Standards Act ("FLSA") against Honda Manufacturing of Alabama, LLC ("HMA"). The named plaintiffs in this action are Cedric Burroughs ("Mr. Burroughs"), Eddie Caldwell ("Mr. Caldwell"), and Angela Blake ("Ms. Blake") (collectively, "Plaintiffs"). On April 6, 2009, the court conditionally permitted Plaintiffs to proceed as a collective action under the FLSA. (Doc. 67).

Pending before the court is HMA's Motion To Decertify the Collective Action and Dismiss Opt-In Plaintiffs' Claims (the "Motion") (Doc. 154) filed on September 6, 2011. The parties have filed numerous materials in support of and in opposition

to the Motion. (*See* Docs. 155, 158-164, 166, 172-76, 180-84).

While this Motion was pending, a similar request for relief was decided in HMA's favor by another district judge of this court on March 29, 2012, in the lawsuit of *Briggins v. Honda Manufacturing of Alabama, LLC, et al.* (hereinafter "*Briggins*"), No. 1:08-CV-1861-KOB, (Doc. 166) (N.D. Ala. Mar. 29, 2012). *See Briggins*, Doc. 166 at 2 ("The court concludes that such collective action trial would be unmanageable and, more fundamentally, that the plaintiffs in this case are not 'similarly situated' to each other for the purpose of establishing liability under the FLSA.")).

On May 2, 2012, the court entered a show cause order in this litigation with respect to the decertification ruling in *Briggins*:

> The court has studied the Motion and all related materials preliminarily, including the *Briggins* opinion and agrees with the decertification analysis contained therein. While the undersigned is certainly not bound by *Briggins*, it is appropriate for this court to consider adopting the opinion as applicable persuasive authority. Accordingly, Plaintiffs are **ORDERED** to **SHOW CAUSE** no later than May 21, 2012, why the facts material to this lawsuit (as supported with pinpointed citations to the evidentiary record) are appreciably different or distinguishable from those at issue in *Briggins* such that the *Briggins* decertification decision should not persuasively apply here.

(Doc. 185 at 2 (emphasis added)).

Pursuant to this show cause order, Plaintiffs filed their response (Doc. 188) on

2

May 24, 2012. The court then entered an order requiring HMA to file a reply (Doc. 189), which it did on June 28, 2012. (Doc. 193). Accordingly, the Motion is under submission and for the reasons explained below is **GRANTED**.

## II. COLLECTIVE ACTION STANDARDS

Section 206(d) of the FLSA provides:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.

29 U.S.C. § 206(d).

The Court of Appeals for the Eleventh Circuit has endorsed a two-step approach to determining whether to certify a collective action under Section 216(b):

> The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision-usually based only on the pleadings and affidavits which have been submitted-whether notice of the action should be given to potential class members.
>
> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given

notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.

*Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001) (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995)).[1] "Because the court has minimal evidence [during the first stage], this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class." *Hipp*, 252 F.3d at 1218.

> The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives-i.e. the original plaintiffs-proceed to trial on their individual claims.

---

[1] In *Dybach v. State of Fla. Dep't of Corrections*, 942 F.2d 1562 (11th Cir. 1991), the Eleventh Circuit set forth a two-part test for determining whether a collective action under the FLSA should be conditionally certified. The two judicial inquiries for the court to make are: (i) whether there are other employees of the employer who wish to "opt-in;" and (ii) whether these employees are "similarly situated" with respect to both there job duties and their pay. *Dybach*, 942 F.2d at 1567-68; *see also Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1247-49 (11th Cir. 2003) (detailing differences between collective actions under FLSA and class actions under Rule 23).

*Hipp*, 252 F.3d at 1218.[2]

Plaintiffs bear the burden of demonstrating a "reasonable basis" for their contention that collective action status is appropriate. *Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996) (citing *Haynes v. Singer Co., Inc.*, 696 F.2d 884, 887 (11th Cir. 1983)). Also, "[t]he decision to create an opt-in class under § 216(b), like the decision on class certification under Rule 23, remains soundly within the discretion of the district court." *Hipp*, 252 F.3d at 1219.

The Supreme Court has identified the main benefits of a collective action under § 216(b):

> A collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity.

*Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170, 110 S. Ct. 482, 486, 107 L. Ed. 2d 480 (1989). Separate from determining the similarly situated issue, other district courts have "balance[d] these putative benefits against any prejudice to the defendant and any judicial inefficiencies that may result from allowing plaintiffs to

---

[2] Although *Hipp* involved a collective action brought under the Age Discrimination in Employment Act of 1967, the Eleventh Circuit has made clear that the analysis set forth in that case applies with equal force to FLSA collective actions. *Cameron-Grant* , 347 F.3d at 1243 n.2 (11th Cir. 2003).

proceed collectively." *Bayles v. American Medical Response of Colorado, Inc.*, 950 F. Supp. 1053, 1067 (D. Colo. 1996); *see id.* ("Further, regardless of the potential benefits, plaintiffs still must meet their burden of showing that they are similarly situated.").

### III. ANALYSIS

Based upon the substantially similar nature of the material FLSA facts in *Briggins* with those at issue here, the court adopts the decertification decision in *Briggins* as persuasive authority and concludes, in its discretion, that Plaintiffs have not carried their second stage similarly situated burden and that, additionally, upon balancing the competing interests, collective adjudication of this dispute is no longer appropriate. In particular, the court finds that Plaintiffs' response to the show cause order does not establish any appreciable factual distinctions between the *Briggins* record and this one, such that the decertification analysis utilized in *Briggins* should somehow be disregarded or discounted by this court.

Instead, the court agrees with *Briggins* that the material differences among the various positions, zones, and departments that this FLSA lawsuit presents "will make it impractical to 'resolve any significant issues on a class wide basis'" and that "[t]his impracticality becomes even more apparent when considering the individual defenses that the defendant can assert in this case." (Doc. 166 at 31).

Additionally, the court is not persuaded by Plaintiffs' record-keeping arguments as grounds for opposing the Motion. The Supreme Court's burden-shifting decision in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946), *overturned on other grounds by statute as recognized in McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1214 (8th Cir. 1984) ("Congress passed the Portal Act to overturn the effect of *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946), in which the Supreme Court held that certain preliminary and incidental activities not previously considered part of a compensable workday were subject to FLSA's minimum-wage and overtime provisions."), does not suggest, much less bind, this court to find that a "reasonable basis" for continuing the collective action status of this lawsuit exists.

Critically, *Anderson* simply is not a decertification decision, but instead arises out of the context of potential FLSA liability when an employer's records evidencing the hours worked by and compensation paid to its employees are lacking:

> When the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records. But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a more difficult problem arises. The solution, however, is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep

7

> the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act. <u>In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference</u>. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Anderson*, 382 U.S. at 687-88, 66 S. Ct. at 1192 (emphasis added). Plaintiffs' reliance upon other FLSA record-keeping opinions to counter HMA's decertification efforts is similarly misplaced.

In sum, this lawsuit contains a myriad of individualized inquiries coupled with a dearth of proof on commonality, *e.g.*, an HMA plan, policy, or practice that is uniformly applied and well-suited for collective treatment. Consequently, akin to *Briggins*, this court discretionarily discontinues this case's conditional collective course.

## IV. CONCLUSION

Accordingly, the Motion is **GRANTED**, and the collective action previously permitted to proceed conditionally is **HEREBY DECERTIFIED**. Relatedly and consistent with guidance from *Hipp* as well as the FLSA decertification procedures

followed by this court in *Collins v. Family Dollar Stores, Inc.* (hereinafter "*Collins*"), No. 7:04-CV-0553-VEH, (Doc. 240) (N.D. Ala. Dec. 11, 2006), all the claims of the opt-in plaintiffs are **HEREBY DISMISSED WITHOUT PREJUDICE** to the right of each opt-in plaintiff to pay the required filing fee and initiate his or her own separate action against HMA no later than August 20, 2012. *Collins*, (Doc. 240 at 1-2). If any dismissed opt-in plaintiff fails to file his or her own lawsuit and pay the required filing fee on or before August 20, 2012, then such person will forego the opportunity to pursue any FLSA claims against HMA that form the basis of this litigation. (*Id.* at 2).

The court further concludes, consistent with its decertification order in *Fox v. Tyson Foods, Inc.* (hereinafter *Fox*), No. 4:99-CV-1612-VEH, (Doc. 602) (N.D. Ala. Nov. 15, 2006), that there are variations among Plaintiffs' work assignments and claims such that collective adjudication of them is also inappropriate. *Fox*, (Doc. 602 at 1). For example, while Mr. Burroughs has worked as a production employee for the same shift in the same zone of Assembly Frame within Building 1 or Line 1[3] for his entire career at HMA (Doc. 155 at 45; Doc. 56 ¶ 11; Doc. 163-6 at 7 at 18-19;

---

[3] Building 1 or Line 1 has produced the Honda Odyssey and occasionally the Ridgeline. (Doc. 161-1 (Linda Bailey Decl.) ¶ 3).

Doc. 62-5 ¶ 4), according to the complaint,[4] Ms. Blake's employment as a production worker has been primarily in Building 2 or Line 2.[5] (Doc. 56 ¶ 12). As the Administration Division Manager for HMA explains although the Vehicle Quality, Engine Assembly, and Production Materials Control departments have a single department manager, each HMA production line is "separately managed and organized . . . ." (Doc. 161-1 ¶ 5).

Additionally, while like Mr. Burroughs, Mr. Caldwell has been in Building 1 (Doc. 56 ¶ 13; Doc. 62-6 ¶ 4), he has worked in two different zones within Assembly Frame and has testified differently than Mr. Burroughs about HMA's practices and procedures with respect to management of the workload within these zones. (*See, e.g.*, Doc. 155 at 45-46 (contrasting Mr. Burroughs' working through lunch allegations with no similar allegations made by Mr. Caldwell);[6] *id.* (contrasting Mr. Burroughs's 10-12 minute pre-shift allegations with those of Mr. Caldwell, whose

---

[4] The court has been unable to locate any declaration or deposition testimony from Ms. Blake that has been filed into the record. (*See* Docs. 158, 173, 173-1, 173-2). Ms. Blake's "Consent to Join Suit As Party Plaintiff" is part of the record, but this document does not identify the HMA department(s) and/or zone(s) in which she has worked. (Doc. 56 at 17).

[5] Building 2 or Line 2 has produced the Pilot and periodically, the Odyssey and Accord. (Doc. 161-1 ¶ 3).

[6] (*See also* Doc. 163-6 at 20 at 70-72; *id.* at 72 ("If you're on a process make sure that process is completed before you leave it [for lunch].")).

deposition testimony indicated that the time spent on pre-shift efforts depends upon the specific process being performed and also revealed that his personal restrictions prevented him from performing several processes)).[7] Accordingly, Plaintiffs' claims are subject to individualized determinations and are properly adjudicated in separate lawsuits.

The clerk is, therefore, **DIRECTED** to sever the causes of Mr. Caldwell and Ms. Blake from this lawsuit, which will remain pending for Mr. Burroughs. *Fox*, (Doc. 602 at 2). The clerk is to electronically copy the second amended complaint (Doc. 56) and the answer (Doc. 59) filed in 1:08-CV-1239-VEH to the docket of the severed cases. *Fox*, (Doc. 602 at 2). Each severed plaintiff is to pay the filing fee for his or her severed case before August 20, 2012. *Id.* If any severed plaintiff fails to pay the filing fee as provided above, the said case will be dismissed with prejudice. *Id.*

The clerk is further **DIRECTED** to assign the severed cases to the undersigned judge but to withhold drawing a case assignment card for the undersigned judge for such cases until the court can meet as a whole and decide the appropriate allocation

---

[7] (*See also* Doc. 163-6 at 15-16 at 53-54 (estimating time spent by Mr. Burroughs doing pre-shift work); Doc. 163-9 at 28 at 102 (Mr. Caldwell's agreeing that "what needs to be done to start the process depends on the process"); *id.* at 12 at 41 (Mr. Caldwell's indicating that there are 10-15 processes in rear suspension that he does not perform due to his restrictions)).

of case assignment credit. *Fox*, (Doc. 602 at 2). The litigation of Plaintiffs' severed claims will proceed in conformance with the most recent scheduling order (Doc. 115) entered in this case on November 30, 2010, as further modified on May 6, 2011, by the court's CM/ECF margin entry. Finally, the severed cases shall be consolidated for discovery purposes under 1:08-CV-1239-VEH, and all motions and other documents are to be filed in that litigation. *Fox*, (Doc. 602 at 2).

    **DONE** and **ORDERED** this the 19th day of July, 2012.

                                        **VIRGINIA EMERSON HOPKINS**
                                        United States District Judge